UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------

Clifford Steward, individually and on behalf of all similarly
situated persons,

**CV**

         **Plaintiff,**

       - against -

The City of New York, The New York City Board of
Education, Harold O. Levy, individually and in his official
capacity as Chancellor of the New York City Board of
Education, Felix E. Vazquez, individually and in his official
capacity as Community Superintendent of District 32 of the
New York City Board of Education, Mildred L. Boyce, The
United Federation of Teachers, and Pace University,

         **Defendants.**

**04 - 1508**

]
]
] <u>Complaint and Demand for</u>
] <u>Jury Trial</u>
]
]
]              LEVY, M.J.
]
]
]
]
]

-----------------------------------------------

Plaintiff, by his attorney, Michael G. O'Neill, states for his complaint as

follows:

# Nature of the Action, Jurisdiction and Venue

1.      This is an action arising out of the deprivation under color of statute,

ordinance, regulation, custom or usage of rights, privileges, and immunities secured to

plaintiff by the Constitution and Laws of the United States of America and the violation

of the laws and statutes of the State of New York, out of the breach of the plaintiff's

collective bargaining representative's duty to provide fair representation to the plaintiff,

and out of various breaches of New York state law by the plaintiff's former employer

and Pace University.

2.     This Court has jurisdiction over the subject matter of this lawsuit by virtue of 29 U.S.C. §185, 42 U.S.C. §1983, 28 U.S.C. §1331, 28 U.S.C. §1343 and 28 U.S.C. §1367.

3.     Venue is properly laid in the Eastern District of New York because some or all of the defendants are residents of the Eastern District and because most or all of the events giving rise to the claims set forth herein took place within said District.

**The Parties**

4.     Plaintiff is an individual and resides in the State of New York.

5.     Defendant New York City Board of Education (the "Board") is a municipal corporation organized under the laws of the State of New York.  The principal purpose of the Board of Education is to operate the New York City public school system.

6.     Defendant City of New York (the "City") is a municipal corporation organized under the laws of the State of New York.

7.     The United Federation of Teachers ("UFT") is a labor union.  The UFT is the sole bargaining agent for most of the non-supervisory educators who work in the New York City public schools.

8.     Pace University is a private university with its main campus in the City of New York.

2

9.       During all relevant times, Harold O. Levy ("Levy") was the Chancellor of New York City Public Schools. Levy is sued in his individual and official capacity.

10.       During all relevant times, Felix E. Vazquez ("Vazquez") was the Superintendent of District 32 of the New York City Public School system. Vazquez is sued in his individual and official capacity.

11.       During all relevant times, Mildred L. Boyce ("Boyce") was the Principal of the Philippa Schuyler Middle School for the Gifted and Talented in Brooklyn, New York. Boyce is sued in her individual and official capacity.

## Fact Allegations Common To All Causes Of Action

12.       In about July, 2000, the New York State Department of Education promulgated alternative teacher certification requirements, codified at Section 80-5.13 of Title 8 of the Official Compilation of Codes, Rules and Regulations of the State of New York (8 NYCRR 80-5.13). These new regulations provided an alternative route to permanent teacher certification, establishing a "Transitional B certificate," principally to streamline the process by which talented and educated individuals from other walks of life could change careers and become teachers.

13.       At about the same time, the City and the Board established a program called the NYC Teaching Fellows. The Teaching Fellows Program provided a wide array of incentives to attract individuals to obtain Transitional B certificates and teach in the New York City public school system. Among other things, successful candidates received the initial education and training required for the Transitional B certificate at

3

no cost, and they received a tax free stipend during that training. At the conclusion of the training, they were hired by the Board at full teacher's pay. The Teaching Fellows Program would also pay for the full cost of obtaining a Masters Degree over the ensuing two years, which was necessary for permanent certification.

14.     Upon information and belief, the alternative teacher certification and NYC Teaching Fellows program were established in the face of a shortage of teachers and in recognition of the fact that the existing system was not working and that many students were being failed by public school systems in the State of New York.

15.     On May 23, 2001 plaintiff was accepted into the NYC Teaching Fellows program.

16.     Plaintiff satisfied his initial training and testing requirements and was hired by the Board as a teacher. Plaintiff received employment as a teacher in District 32 in Brooklyn.

17.     As part of the Teaching Fellows program and as required by New York State Department of Education regulations, plaintiff was enrolled in Pace's Master of Science for Teachers program in Secondary Education for the Fall 2001 semester. Under the Teaching Fellows program, plaintiff's tuition was to be totally subsidized by the City or the Board.

18.     Plaintiff began teaching at the Philippa Schuyler Middle School (the "School") for the Gifted and Talented in Brooklyn, New York in September, 2001.

19.     Unknown to plaintiff (because neither the UFT, The Board or the City ever informed plaintiff), the New York State Department of Education regulations

4

required the Board, Pace and the plaintiff to enter into certain written agreements concerning plaintiff's teaching load and the mentoring, planning, observation, advisement, and evaluation of plaintiff's teaching.

20.     In addition, the New York State Department of Education regulations required that plaintiff receive daily mentoring by an experienced teacher in the area of plaintiff's proposed certification for the first eight weeks of his employment as a teacher and that his teaching be mentored for at least the remainder of his first year in the NYC Teaching Fellows program. This mentoring never took place.

21.     Plaintiff was a candidate for a certificate in social studies. Under New York State Department of Education regulations, plaintiff should have been given a teaching load within his area of proposed certification. Instead, plaintiff was assigned to a class in computer education/research, and another in writing aided by computer research. Not only did plaintiff not receive the mentoring required by the State, he was not even given a curriculum to use in teaching these classes.

22.     Unknown to plaintiff (because neither the UFT, The Board or the City ever informed plaintiff), under New York State Department of Education regulations the time, manner, frequency, etc. of plaintiff's observations were to have been agreed upon between Pace, the Board and plaintiff. An observation consists of an educated pedagogue, typically a principal or assistant principal, sitting in on a class and observing the teaching methods of the teacher.

23.     This did not happen. Instead, plaintiff received unplanned, uncoordinated and antagonistic reviews by School personnel twice in October, 2001 and

5

again in December, 2001. These observations should never have taken place. Plaintiff should have received observations in accordance with New York State Department of Education regulations.

24.     In November, 2001, an issue arose concerning a grade of 70 that plaintiff had given to a student. The student's mother complained to the School, and the School criticized plaintiff's substantiation of that grade. This would never have happened had plaintiff received the mentoring and other support required by the New York State Department of Education regulations.

25.     On about January 16, 2002, plaintiff was called into a "disciplinary conference" for an incident that allegedly occurred on December 20, 2001. According to information given to plaintiff, a student complained that plaintiff had pulled the chair out from under him as he was sitting down, causing him to fall to the ground. The School characterized the incident as one of corporeal punishment. Such an incident never happened, as revealed by the School's own investigation of the incident.

26.     On January 18, 2002, Boyce terminated plaintiff's employment, effective January 28, 2002. The reasons given by Boyce were the observations of plaintiff's teaching, the incident concerning the grade, and the so called corporeal punishment.

27.     The UFT was during all relevant times plaintiff's collective bargaining representative. By virtue of this relationship, it owed plaintiff a duty to fairly represent his interests concerning his employment by the Board.

28.     During all relevant times, the UFT and the Board were parties to a collective bargaining agreement (the "CBA") which purported to set forth the terms and conditions of employment for all teachers in the New York City public school system.

29.     After being terminated, plaintiff timely filed a grievance with the UFT seeking reinstatement.

30.     The UFT processed plaintiff's grievance, which was denied through the third step, which is the last level before arbitration.

31.     In about May, 2002, the UFT presented to plaintiff a proposed settlement of his grievance.

32.     Plaintiff declined the settlement on the terms presented to him.

33.     Thereafter, in about June, 2002, the UFT notified plaintiff that it would not take his grievance to arbitration. Plaintiff appealed that decision in accordance with the UFT's internal By-Laws.

34.     In January, 2003, the UFT reversed its position and notified plaintiff that it would take his grievance to arbitration.

35.     Plaintiff met with his union representatives numerous times in 2003 in order to prepare for his arbitration. In the course of these meetings, plaintiff began to question his UFT representatives concerning the applicability of the provisions of the CBA to his employment as a NYC Teaching Fellow. Plaintiff was repeatedly advised that this was the UFT's concern, not his.

7

36.     Plaintiff's arbitration was repeatedly rescheduled during 2003. As time went along, plaintiff became increasingly concerned about the applicability of the CBA to his position as an NYC Teaching Fellows. This concern arose from the fact that the only possible remedy (and the remedy being sought by the UFT) available to a non-tenured teacher under the CBA was to be reinstated for the remainder of the school year in which the termination had taken place.

37.     This was an unacceptable and inapplicable remedy for an NYC Teaching Fellow, since the essence of the program was a three year commitment culminating in a Masters Degree and a permanent teacher's certificate. Not only was this irreconcilable with the NYC Teaching Fellows program, but it failed to return plaintiff to the same position he had been in before his termination. Thus, under the arbitration proceedings proposed by the UFT, there was no make whole remedy for the plaintiff.

38.     Plaintiff expressed his concern to his Union representative, in particular the concern that voluntary participation in the arbitration process might prejudice his rights to seek relief elsewhere. Plaintiff's Union representative assured plaintiff that such would not be the case, but he refused to put his assurance in writing.

39.     Therefore, plaintiff announced that, before beginning the arbitration hearing, he would read a statement questioning the jurisdiction of the arbitration proceeding and agree to participate without prejudice to his ability to raise the issue later. When plaintiff made his intentions known, however, the UFT initially refused to

8

proceed with the hearing if plaintiff insisted on reading his statement. This took place on November 14, 2003.

40.     The arbitration hearing was eventually rescheduled for December, 2003. By that time plaintiff had reached the conclusion that the UFT was not representing his interests adequately or in good faith, that the CBA provisions relied on by the UFT did not apply to his employment as an NYC Teaching Fellow, and that the arbitration proceeding that the Board and the UFT proposed with respect to plaintiff could not make plaintiff whole.

41.     Since the UFT had failed to address those concerns of plaintiff, he announced his intention not to participate in that proceeding. Upon information and belief, the arbitration proceeding was not held.

## Class Allegations

42.     Plaintiff seeks to assert claim one herein as a class action under Fed. C. Proc. R. 23(b)(2), in that the UFT has acted and refuses to act on grounds generally applicable to all NYC Teaching Fellows, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

43.     Plaintiff also seeks to assert claim one herein as a class action under Fed. C. Proc. R. 23(b)(3), in that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

44.     The class of individuals that plaintiff proposes to represent consists of all NYC Teaching Fellows employed by the Board and represented by the UFT since the inception of the NYC Teaching Fellows program to the present.

45.     Claim one is properly maintainable as a class action because the number of individuals in plaintiff's proposed class is so numerous that joinder of all parties is impracticable.  According to the NYC Teaching Fellows program website, there are over Five Thousand NYC Teaching Fellows currently teaching in the New York City Schools.

46.     There are questions of law and fact common to all members of the class.  As set forth in greater detail herein, plaintiff alleges that the UFT failed to represent NYC Teaching Fellows as a class by willfully failing to negotiate terms and conditions of their employment by the Board.

47.     The first claim herein of the plaintiff is typical of the claim of the proposed class.  Indeed, it is identical.

48.     Plaintiff will fairly and adequately protect the interests of the proposed class.

# Allegations of Breach of Duty of Fair Representation Against the UFT

## First Claim – Breach of Duty of Fair Representation by Failure to Negotiate Terms and Conditions of Employment

49.     Article One of the CBA provided that: "During the term of this agreement should the Board employ a new title or category of employees having a

10

community of interest with employees in the existing bargaining unit described herein, employees in such new title or category shall be included within the existing bargaining unit, and upon request of the union the parties shall negotiate the terms and conditions of employment for such new title or category of employees; but nothing contained herein shall be construed to require re-negotiation of terms and conditions of employment applicable to employees in the existing bargaining unit as a result of the Board's redesignation of the title or category of employees in the unit."

50.     The CBA contained provisions relating to the employment of non-tenured teachers having temporary, provisional and permanent licenses issued by the New York State Department of Education. These such license categories are all specifically defined licenses under New York State Department of Education regulations. Plaintiff did not hold any such license and therefore the provisions of the CBA relating to such teachers did not apply to plaintiff.

51.     The CBA did not contain any provisions relating to teachers holding Transitional B licenses or teachers under the NYC Teaching Fellows program.

52.     When the New York State Department of Education instituted the Transitional B license in 2000, and when the City and Board instituted the NYC Teaching Fellows program shortly thereafter, it constituted a "new title or category of employees having a community of interest with employees in the existing bargaining unit described herein" within the meaning of Article One of the CBA as quoted above. As a result, the UFT should have negotiated terms and conditions of employment with respect to teachers holding Transitional B licenses.

11

53.     Upon information and belief, the failure of the UFT to negotiate terms and conditions of employment for NYC Teaching Fellows as a class was an intentional decision based on its animus toward the NYC Teaching Fellows program and the unpopularity of the program by the vast majority of the membership of the UFT. Upon information and belief, it would have been politically unacceptable for the UFT leadership to negotiate terms and conditions of employment for NYC Teaching Fellows consistent with their rights under New York State Department of Education regulations and the NYC Teaching Fellows program, and therefore the UFT intentionally chose to abandon the rights of the NYC Teaching Fellows and administer their employments as if they were classified as CPT or PPT under the CBA.

54.     The UFT's failure to negotiate terms and conditions of employment with respect to teachers holding Transitional B licenses constituted a breach of its duty of fair representation to plaintiff, indeed, to all teachers employed by the Board under the NYC Teaching Fellows program.

## Second Claim – Breach of Duty of Fair Representation by Failure to Assert Plaintiff's Rights.

55.     Section 80-5.13(a)(2)(iii) of the New York State Department of Education regulations establishes that a prerequisite to the issuance of a Transitional B license is the "commitment from a school or school district of employment as a full-time teacher with the school or school district in the area of the certificate sought for at least three school years, which shall include at least one year of mentoring as prescribed in section 52.21(b)(3)(xvii) of this Title."

12

56.     In plaintiff's case, this means that the Board made a legally required and binding commitment to employ plaintiff for at least three years. Plaintiff was unaware of this fact, however, because the City or the Board, as part of its NYC Teaching Fellows program undertook to process all the paperwork needed by the New York State Department of Education regulations for the issuance of the Transitional B certificate.

57.     Upon information and belief, then, the City or the Board provided on behalf of plaintiff documentation to the New York State Department of Education to the effect that the Board was legally committed to employing plaintiff for at least three years. The City or the Board never informed plaintiff of this fact, however.

58.     It is inconceivable, however, that the UFT, a massive union the primary purpose of which was to protect the rights of teachers employed by the Board, was unaware of the provisions of the New York State Department of Education regulations relating to Transitional B licenses.

59.     If the UFT was actually aware of the provisions of the New York State Department of Education regulations relating to Transitional B licenses, then it was under a duty to advise the plaintiff that he had a legitimate expectation, if not a legally enforceable right, to continued employment by the Board for at least three years.

60.     If the UFT was actually aware of the provisions of the New York State Department of Education regulations relating to Transitional B licenses, then it was grossly and recklessly negligent in its failure to educate itself with respect to those regulations. In short, if the UFT was not actually aware of the provisions of the New

13

York State Department of Education regulations relating to Transitional B licenses, then it was only as a result of its willful ignorance and the UFT should be held to the same standard as actual knowledge.

61.     At all times plaintiff was justified in relying on the UFT to be familiar with the New York State Department of Education regulations and to provide plaintiff with reasonable advise and representation based on those regulations.

62.     Instead of informing plaintiff that he had a legitimate expectation, if not a legally enforceable right, to continued employment by the Board for at least three years, however, the agents of the UFT responsible for the handling of plaintiff's grievance consistently took the position that plaintiff should be classified as a "CPT" or "PPT" under the CBA, which were categories of teachers who had no expectation of continued employment beyond a single school year and who could, under some circumstances, be terminated virtually at will.

63.     Upon information and belief, the policy of the UFT not to enforce the specific rights of NYC Teaching Fellows as a class was an intentional decision based on its animus toward the NYC Teaching Fellows program and the unpopularity of the program by the vast majority of the membership of the UFT.  Upon information and belief, it would have been politically impossible for the UFT to enforce the rights of NYC Teaching Fellows, and therefore the UFT intentionally chose to ignore those rights and represent NYC Teaching Fellows as if they were classified as CPT or PPT under the CBA.

14

# Allegations of Constitutional Violations Against State Defendants

## Third Claim – Violation of 42 U.S.C. §1983 by the City, Board, Levy and Vazquez.

64.     By virtue of the New York State Department of Education regulations cited above, and in particular , 8 NYCRR 80-5.13 and 8 NYCRR 80-52.21(b)(3)(xvii), plaintiff had an expectations of continued employment with the Board for at least three years.

65.     Plaintiff's expectation of continued employment gave rise to a property interest protected by the due process clause of the 14th Amendment of the United States Constitution.

66.     Plaintiff had a property interest protected by the due process clause of the 14th Amendment in the Transitional B certificate issued to him by the New York State Department of Education.

67.     The inducements and benefits afforded to plaintiff by virtue of the NYC Teaching Fellows program also gave rise to a property interest protected by the due process clause of the 14th Amendment of the United States Constitution.

68.     Accordingly, the City and the Board could not legally deprive plaintiff of those property interests without affording to plaintiff appropriate due process.

69.     Levy and the Vazquez were aware, or should have been aware, that the New York State Department of Education regulations required the Board to guarantee a three year term of employment to the plaintiff.

15

70.     Levy and the Vazquez were aware, or should have been aware, that plaintiff possessed a Transitional B certificate that would be lost if plaintiff lost his employment by the Board.

71.     Levy, Vazquez and Boyce were aware, or should have been aware, that the NYC Teaching Fellows program provided significant economic and other property benefits to plaintiff above and beyond the teacher's salary paid by the Board.

72.     Levy and Vazquez were high ranking policy makers within the Board.

73.     Despite knowing that NYC Teaching Fellows such as plaintiff had significant property interests in continued employment by the Board, in his Transitional B certificate, and in continued participation in the NYC Teaching Fellows program, the City, Board, Chancellor and Vazquez knowingly, intentionally and as a matter of official City and Board procedure decided not to implement due process procedures for the safeguarding of the property interests of NYC Teaching Fellows such as plaintiff.

74.     By virtue of the foregoing, the City, Board, Chancellor and Vazquez knowingly instituted or approved unconstitutional City and Board policies and procedures with respect to the deprivation of the aforementioned property interests of NYC Teaching Fellows such as plaintiff.

75.     Plaintiff's due process rights were violated when, as a result of the unconstitutional policies and procedures of the City and the Board, he was terminated without a prior hearing.

76.     Plaintiff's due process rights were violated when, as a result of the unconstitutional policies and procedures of the City and the Board, he was denied any

16

meaningful post termination due process for the recovery of his aforementioned property interests.

77.      By virtue of the foregoing, the City, the Board, Levy and the Vazquez have violated plaintiff's rights under 42 U.S.C. §1983.

## Fourth Claim – Violation of 42 U.S.C. §1983 by Boyce.

78.      Upon information and belief, Boyce was aware of plaintiff's property interests in his Transitional B certificate, his continued employment by the Board and his continued participation in the NYC Teaching Fellows program.

79.      Boyce was aware that plaintiff would be deprived of those property interests in the event that his employment by the Board were terminated.

80.      On January 18, 2002, Boyce, exercising authority vested in her by the Board and acting under color of state law, terminated plaintiff's employment, based on reasons that Boyce knew were false and that Boyce knew did not warrant the termination of plaintiff's employment.

81.      In so terminating plaintiff's employment, Boyce intended to and did deprive plaintiff of his property interests in his Transitional B certificate, in his continued employment by the Board and in his continued participation in the NYC Teaching Fellows program.

82.      By virtue of the foregoing, Boyce violated plaintiff's rights under 42 U.S.C. §1983.

17

## Allegations of State Law Claims Against The City, the Board and Pace

### Fifth Claim – Breach of Contract by Pace

83.     Upon information and belief, Pace offered to students an "alternative teacher certification program" as defined in New York State Department of Education regulations and certified as such by the New York State Department of Education.

84.     Enrollment in an alternative teacher certification program is a prerequisite for a Transitional B certificate.

85.     Pursuant to the NYC Teaching Fellows program, plaintiff became enrolled as a student at Pace in its alternative teacher certification program.

86.     The relationship between plaintiff and Pace was contractual or quasi contractual in nature.

87.     Implicit in the contract between plaintiff and Pace was that Pace would abide by all New York State Department of Education regulations relating to the alternative teacher certification program.

88.     Hence, the such New York State Department of Education regulations were incorporated into the contract between plaintiff and Pace. Alternatively, such regulations became part of an implied agreement between plaintiff and Pace.

89.     Pace knew that plaintiff was enrolling in its alternative teacher certification program as part of the NYC Teaching Fellows program and in order to qualify for the Transitional B certificate, eventually leading to a permanent teaching certificate.

18

90.    The New York State Department of Education regulations incorporated into plaintiff's contract (or implied contract) with Pace included the following contained in 8 NY ADC 52.21-(b)(3)(xvii)(b)(3)(ii):

(B) Prior to the candidate's employment as a teacher, the institution shall execute a written agreement with the employing school or school district by which the school or school district agrees to consult with program faculty and the candidate before determining the teaching load of the candidate; agrees to provide daily mentoring of the candidate by certified school personnel during the first eight weeks of teaching; and agrees to execute, before the end of the first eight weeks of teaching, a second written agreement for continued mentoring by certified school personnel during the remainder of the time that the candidate is enrolled in the program and teaching.

(C) The first written agreement shall indicate that all mentoring will be provided by certified school personnel who have received preparation for their role as mentors prior to serving as mentors, and shall include scheduled times during the candidate's first eight weeks of teaching for the candidate and mentor to engage in planning, observation, advisement, and evaluation.

(D) The second written agreement shall include a schedule for continued mentoring during the remainder of the time that the candidate is enrolled in the program and teaching and shall be designed to meet the individual learning needs of the candidate. The agreement shall be signed by the principal or designee, program faculty, the mentor, and the candidate before the end of the first eight weeks of teaching. It shall specify times, periodically throughout each school year, for the candidate and mentor to engage in planning, observation, advisement, and evaluation; and shall also specify dates for meetings of program faculty, the school principal or designee, the mentor, and the candidate at least once every three months during the first year of mentored teaching and periodically thereafter, to provide the candidate with advice for improving teaching practices.

(E) The second written agreement for continued mentoring and supervision may be modified to reflect changing learning needs of the candidate by agreement of and with the signatures of the principal or designee, program faculty, the mentor, and the candidate.

19

(F) Program faculty shall supervise the teaching of the candidate and promote the linking of theory and practice by observing and advising the candidate at least once each month during the first year of mentored teaching and periodically throughout the remainder of the time that the candidate is enrolled in the program and teaching.

91.     Pace failed to live up to its obligations to plaintiff under the foregoing provisions.  Among other things, Pace failed to enter into the required written agreements required therein and failed to provide to plaintiff the mentoring required therein.

92.     Pace's failure to abide by its obligations under the New York State Department of Education regulations had a material and detrimental effect on plaintiff's performance in the NYC Teaching Fellows program and as a teacher with the Board.

93.     Pace's failure to abide by its obligations under the New York State Department of Education regulations contributed to plaintiff's termination by the Board and the loss of his benefits as a participant in the NYC Teaching Fellows program.

## Sixth Claim – Negligence by Pace

94.     Pace owed a duty to plaintiff to abide by all New York State Department of Education regulations applicable to the alternative teacher certification program.

95.     Pace breached its duty to plaintiff by, among other things, failing to enter into written agreements and failure to provide mentoring as alleged above.

96.     By virtue of Pace's negligence, plaintiff has suffered damages, for which Pace is liable.

## Seventh Claim – Breach of Contract by the City and The Board

97.    Plaintiff entered into a contractual or quasi-contractual relationship with the City and/or the Board when he enrolled and was accepted into the NYC Teaching Fellows program.

98.    Implicit in the contract between plaintiff and the City and/or Board was that the City and/or Board would abide by all New York State Department of Education regulations relating to the alternative teacher certification program.

99.    Also implicit in the contract between plaintiff and the City and/or Board was that the City and/or Board would engage in fair dealing and good faith and do nothing to prevent plaintiff from enjoying the bargained for benefits of the NYC Teaching Fellows program.

100.    As part of the NYC Teaching Fellows program, the City and/or Board agreed to handle all necessary paperwork and logistics required for plaintiff's Transitional B certificate.

101.    As part of the foregoing, the City and/or Board undertook to interface with Pace and the Board and to assure that Pace and the Board met their obligations to plaintiff under the New York State Department of Education regulations.

102.    The City and/or Board breached their agreement with plaintiff in, among other things, failing to assure that the Board and Pace lived up to their obligations to plaintiff under the New York State Department of Education regulations as hereinabove alleged.

21

103.    Furthermore, to the extent that the Board was acting in a dual capacity as sponsor of the NYC Teaching Fellows program and plaintiff's employer, it breached the implied covenant of fair dealing and good faith in its NYC Teaching Fellows program contract with plaintiff by failing to abide by its obligations under the New York State Department of Education regulations and by permitting the termination of plaintiff's employment without cause or justification.

## Seventh Claim – Negligence by the City and The Board

104.    The City and/or the Board owed a duty to the plaintiff to, among other things, ensure that the Board and Pace lived up to their obligations under the New York State Department of Education regulations.

105.    The City and/or the Board breached their duty to plaintiff by, among other things, in the Board's case, failing to abide by the New York State Department of Education regulations relating to plaintiff's Transitional B certificate and in the case of the City and/or Board, by failing to monitor Pace to ensure that Pace abided by its obligations to plaintiff under the New York State Department of Education regulations.

106.    By virtue of the negligence of the City and/or Board, plaintiff has suffered damages, for which they are liable.

## Eighth Claim – Breach of Third Party Beneficiary Agreement

107.    Upon information and belief, as part of the NYC Teaching Fellows program, the City and/or the Board entered into an agreement with Pace relating to Pace's performance of its role in that program.

22

108.      Plaintiff, as a participant of the NYC Teaching Fellows program, was a third party beneficiary of that agreement.

109.      The obligations of Pace under that agreement were essentially the obligations alleged in the fifth and sixth claims hereinabove.

110.      Pace breached those obligations, causing plaintiff damages.

WHEREFORE, plaintiff requests the following relief:

a)       a declaration that the UFT has breached its duty of fair representation to all NYC Teaching Fellows by failing to negotiate terms and conditions of employment with respect to them together with appropriate remedial injunctive relief;

b)       injunctive relief reinstating plaintiff to the NYC Teaching Fellows program and to his employment by the Board, with full back pay and other make whole relief;

c)       a judgment against the defendants, jointly and severally, awarding contractual, compensatory and punitive damages in an amount to be determined at trial by a jury;

d)       a statutory award of reasonable attorney's fees, costs and disbursements;

e)       such other and further relief as this Court may deem just, meet and proper under the circumstances.

23

Dated: New York, New York
April 8, 2004

MICHAEL G. O'NEILL
(MO3957)

Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

## JURY DEMAND

Plaintiff demands trial by jury in this action.

Dated: New York, New York
April 8, 2004

MICHAEL G. O'NEILL
(MO3957)

Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

24