UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Clifford Steward, individually and on behalf of all
similarly situated persons,

Plaintiff,

-against-

The City of New York, The New York City Board of
Education, Harold O. Levy, individually and in his
official capacity as Chancellor of the New York City
Board of Education, Felix E. Vazquez, individually and
in his official capacity as Community Superintendent of
District 32 of the New York City Board of Education,
Mildred L. Boyce, The United Federation of Teachers,
and Pace University,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Diana Goell Voigt*
*Eric Eichenholtz*

*Tel: (212) 788-0885*
*NYCLIS No. 04LE000114*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT............................................................................1

STATEMENT OF FACTS.................................................................................5

ARGUMENT...................................................................................................8

     POINT I.................................................................................................8

PLAINTIFF WAS NOT ENTITLED TO A HEARING IN CONNECTION WITH HIS TERMINATION BECAUSE PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT WITH THE BOARD OR IN HIS TRANSITIONAL B TEACHING CERTIFICATE

A. As a provisional teacher, plaintiff did not have a constitutionally protected property interest in his employment with the Board...............................8

B. Plaintiff did not have a property interest in his Transitional B teaching certificate..............................................................................11

     POINT II...............................................................................................13

EVEN ASSUMING ARGUENDO THAT PLAINTIFF HAD A PROTECTED PROPERTY INTEREST IN HIS TEACHING POSITION OR TRANSITIONAL B CERTIFICATE, PLAINTIFF'S DUE PROCESS CLAIMS MUST FAIL BECAUSE PLAINTIFF HAD MEANINGFUL AND ADEQUATE REMEDIES AVAILABLE TO HIM

A. Plaintiff cannot establish that he was denied adequate post-deprivation remedies for the alleged random acts of the Board...............................14

B. Plaintiff cannot establish that the board had a policy of depriving employees of their constitutional rights..................................................16

     POINT III..............................................................................................17

PLAINTIFF'S CLAIMS AGAINST CHANCELLOR LEVY MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE THAT CHANCELLOR LEVY WAS PERSONALLY INVOLVED IN ANY ALLEGEDLY UNCONSTITUTIONAL ACTS

POINT IV...........................................................................................18

        THE COMPLAINT IS DEVOID OF ANY
        ALLEGATIONS AGAINST THE CITY OF NEW
        YORK

POINT V.............................................................................................19

        THIS COURT SHOULD DECLINE TO
        EXERCISE SUPPLEMENTAL JURISDICTION
        OVER PLAINTIFF'S STATE LAW CLAIMS

CONCLUSION......................................................................................21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

Clifford Steward, individually and on behalf of all similarly
situated persons,

                              Plaintiff,                         04 CV 1508 (CBA) (RML)

            -against-

The City of New York, The New York City Board of
Education, Harold O. Levy, individually and in his official
capacity as Chancellor of the New York City Board of
Education, Felix E. Vazquez, individually and in his
official capacity as Community Superintendent of District
32 of the New York City Board of Education, Mildred L.
Boyce, The United Federation of Teachers, and Pace
University,

                              Defendants.

----------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff Clifford Steward ("plaintiff") commenced this action, alleging that the

City of New York, the New York City Board of Education (the "Board"), former Chancellor

Harold Levy, (collectively the "City defendants"), along with former Superintendent Felix

Vazquez and former Board employee Mildred Boyce,[2] terminated plaintiff without providing

him adequate due process. In addition to his due process claims, plaintiff asserted a claim that

his union, the United Federation of Teachers ("UFT"), breached their duty of fair representation

---

[2] Upon information and belief, defendants Felix E. Vazquez and Mildred Boyce have not yet been served with the summons and complaint. However, the City defendants, for the reasons discussed herein, request that the claims against Mr. Vazquez and Ms. Boyce be dismissed *sua sponte*.

and also asserted various state law tort and contract claims against the City defendants, the UFT and Pace University.[3]

All parties requested permission to move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. At the pre-motion conference held on September 14, 2004, the Court ordered the parties to brief the federal due process claims first and, if those claims survived dismissal, the Court would address the remaining issues at a later date. City defendants submit this memorandum of law on the grounds that plaintiff's federal due process claims should be dismissed. In order to allege a violation of due process, a plaintiff must demonstrate that he or she had a constitutionally protected property interest. If a protected interest is identified, the plaintiff must then demonstrate that City defendants deprived the plaintiff of that interest without due process. In this case, plaintiff cannot identify a protected property interest, nor can he demonstrate that the City defendants deprived him of any alleged property interest without due process.

It is well-settled law in New York State that only tenured teachers have protected property interests in employment. In order to achieve tenure, a candidate must be appointed, possess all of the credentials required by state law, and successfully complete a three year probationary period. Probationary or provisional teachers can be fired for any reason and without a hearing and have no property interest in their employment. As discussed in detail below, plaintiff did not yet possess the necessary credentials to be officially appointed as a teacher, and was therefore employed provisionally at the Board of Education. Thus, plaintiff had no protected property interest in his employment with the Board.

---

[3] This office does not represent the UFT, nor does it represent Pace University.

Additionally, plaintiff claims that he had a property interest in his Transitional B teaching certificate. However, a property interest in a teaching license only exists if the license entitles the license holder to seek employment that they would not otherwise be entitled to seek. If the loss of a teaching certificate does not deny a meaningful opportunity to seek employment and the possession of the certificate does not confer a claim to any specific position, no property interest exists in the mere possession of the teaching license. Here, the alleged loss of plaintiff's teaching certificate did not preclude plaintiff from seeking any employment to which he would otherwise be entitled, nor did possession of a Transitional B certificate create a claim to any specific position or to any employment. Accordingly, plaintiff had no property interest in his Transitional B certification.

Even assuming *arguendo* that plaintiff had some protected property interest, it is clear that City defendants have provided plaintiff with adequate due process to protect his property interests. Plaintiff presents two alternative arguments in his complaint concerning how he was allegedly denied due process: (a) that individual Board employees denied him due process despite knowing he was entitled to due process and (b) that some policy or policies of the Board resulted in his denial of due process. Both of these theories fail as a matter of law.

To the extent that plaintiff alleges that he was deprived due process by unauthorized or unlawful acts of Board employees, plaintiff had adequate post-deprivation remedies available to him that could correct this alleged lack of due process. Specifically, plaintiff could have (and in fact did) challenge his termination through a grievance through the grievance procedure set forth in the collective bargaining agreement between his union and the Board of Education. Plaintiff could have also commenced a special proceeding in New York State Court pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), in which he could have sought reinstatement and back pay as remedies. In this case, plaintiff did

3

not exercise his post-deprivation rights of commencing an Article 78 proceeding, and abandoned his post-deprivation grievance remedy just prior to his case being heard by a neutral arbitrator.

To the extent that plaintiff alleges that the Board had a policy or policies that denied him due process, his claims are similarly without merit. As plaintiff concedes throughout the complaint, the Board provided employees such as plaintiff with the ability to challenge the loss of their job through a grievance process. Plaintiff even admits that he participated in this grievance process and requested reinstatement and back pay as remedies. Plaintiff's grievance was scheduled to be heard by a neutral arbitrator when plaintiff decided to walk away from the grievance process due to disagreements with his union. It is well settled that when a plaintiff voluntarily foregoes the due process afforded him, he cannot subsequently bring an action alleging a denial of due process.

In addition, plaintiff has provided no basis to assert claims against the City of New York or Chancellor Levy, and therefore the claims against these defendants must be dismissed on that ground as well.

## STATEMENT OF FACTS[4]

In or about July 2000, the Board established a program called the "NYC Teaching Fellows" (hereinafter "teaching fellows"). The teaching fellows program provided individuals the opportunity to obtain a "Transitional B certificate" and to teach in the New York City public school system while pursuing a Masters degree and a state teaching license. See Declaration of Eric Eichenholtz, dated November 1, 2004 ("Eichenholtz Decl."), Exhibit 1 (hereinafter "Complaint") ¶¶12-13. On or about May 23, 2001, plaintiff, enrolled in the NYC Teaching Fellows program. See Complaint ¶¶15-18, 25.

Participants in the teaching fellows program begin the program by attending training sessions. After completing the training sessions, the program allowed participants to begin working as a teacher without having to obtain the necessary graduate education and permanent certification. See Complaint ¶13. Under New York State law, a masters degree in education is required for permanent teaching certification and, consequently, a permanent or tenured teaching position. Id. at ¶¶ 13 and 37. The three year program also allows individuals to work toward a subsidized Masters degree in education while working as a teacher in the Board of Education. Id. Successful participants in the teaching fellows program would have obtained a Masters degree in Education and a permanent New York State teaching certification by the conclusion of the program, allowing the teaching fellow to obtain a regular appointment as a teacher. See Complaint ¶37.

Plaintiff satisfied his initial training and testing requirements and began working for the Board in or about September 2001 as a teacher. See Complaint ¶17. Plaintiff was

---

[4] Unless otherwise specified, all facts are taken from the complaint in this matter. For the purposes of this motion to dismiss only, the facts in the complaint are deemed to be true.

assigned to the Phillippa Schuyler Middle School for the Gifted and Talented ("the School"). See Complaint ¶¶16, 18. Shortly after plaintiff began teaching, the School administration conducted observations of plaintiff's teaching methods. As a result of these observations and a complaint from a parent concerning plaintiff's grading practices, the School administration had serious concerns about plaintiff's work performance. See Complaint ¶22-26. Plaintiff was counseled following these classroom evaluations, but the problems with plaintiff's teaching performance continued. See Complaint ¶¶23-25. Indeed, a student complained that plaintiff had pulled a chair out from under the student as he was about to sit down. Id. On January 18, 2002, plaintiff was terminated from his provisional teaching position due to his poor work performance. See Complaint ¶26.

Following plaintiff's termination, plaintiff file a grievance through his union, the UFT, challenging his termination. See Complaint ¶29. This grievance was adjudicated pursuant to procedures set forth in the collective bargaining agreement by and between the UFT and the Board (the "CBA"). See Complaint ¶29. Plaintiff's grievance was heard at three different levels and was denied at each level. See Complaint ¶30. Plaintiff argued in his grievance that he should be reinstated. See Eichenholtz Decl., Exhibit B. During the grievance process, the parties discussed settlement but plaintiff rejected an offer to settle his grievance. See Complaint ¶¶31-32. Nonetheless, the UFT decided to proceed to an arbitration concerning plaintiff's grievance, which would have allowed plaintiff an opportunity to again be heard on the challenge to his termination. See Complaint ¶34.

Plaintiff's arbitration was rescheduled several times in 2003 due to various disagreements plaintiff had with his union. See Complaint ¶36. Specifically, plaintiff and the UFT disagreed about the remedy that should be sought for the alleged wrongful termination. See Complaint ¶¶36-41. Ultimately, plaintiff decided not to participate in the arbitration due to his

disagreement with his union.  <u>See</u> Complaint ¶40.  In or about April 2004, plaintiff commenced the instant action alleging, *inter alia*, that the Board had failed to provide plaintiff with due process after terminating him from his teaching position.

## ARGUMENT

### POINT I

**PLAINTIFF WAS NOT ENTITLED TO A HEARING IN CONNECTION WITH HIS TERMINATION BECAUSE PLAINTIFF DID NOT HAVE A PROPERTY INTEREST IN HIS EMPLOYMENT WITH THE BOARD OR IN HIS TRANSITIONAL B TEACHING CERTIFICATE[5]**

Plaintiff's federal claims are contained in his third and fourth causes of action. Both of these claims allege, in essence, that plaintiff was deprived his constitutional right to due process in connection with his termination from the Board (the "due process claims"). See Complaint ¶¶64-82. However, plaintiff's due process claims are without merit, as plaintiff, who was a provisional teacher, had no property interest in his employment and had no right to a hearing as he alleges. Further, to the extent the complaint alleges that plaintiff had a property right to his Transitional B teaching certificate, it is clear that this alleged "property right" did not exist given the nature of the Transitional B certificate as explicitly defined in state law.

**A.  As A Provisional Teacher, Plaintiff Did Not Have A Constitutionally Protected Property Interest In His Employment With The Board.**

In order to allege a violation of due process, a plaintiff must demonstrate that he or she had a constitutionally protected property interest.  See Rivera v. Community School District Nine, et. al., 145 F.Supp.2d 302, 306 (S.D.N.Y. 2001), citing Board of Regents v. Roth, 408 U.S. 564, 570-571 (1972).  As the Supreme Court has stated, property rights

---

[5] City defendants note that legal arguments made on their behalf to dismiss plaintiff's federal due process claims also applies to the individual defendants Vazquez and Boyce, who have not been served with the summons and complaint.  Therefore, City defendants respectfully request that the court also dismiss the federal claims as to these defendants *sua sponte* for the reasons stated herein.

> are created and their dimensions are defined by
> existing rules or understandings that stem from an
> independent source such as state law – rules and
> understandings that secure certain benefits and that
> support claims of entitlement to those benefits.

See Board of Regents, 408 U.S. at 577. The rules and dimensions of a property interest in a teaching position are clearly established in well settled New York State Law. "Under New York State Law, only teachers with tenure or *de facto* tenure have a property interest in their employment." See Rogovin v. New York City Board of Education, Docket No. 99 CV 3382 (ERK), 2001 U.S. Dist. LEXIS 11923 at *11.

The requirements for achieving tenure are set forth in state law. In order to achieve tenure, and thereby obtain a protected property interest in a teaching position, a teacher appointed by the Board must complete a three year probationary period. See N.Y. Educ Law 2573(1). However, in order to be considered for tenure, a teacher must possess the appropriate educational qualifications and be properly licensed in order to be appointed as a probationary teacher. See N.Y. Educ. Law 2573(9). As plaintiff admits in his complaint, New York State law, New York State Department of Education regulations and BOE regulations require a Masters degree to be licensed, appointed and eligible for tenure. See Complaint ¶13.

As plaintiff admits in his complaint, participants in the teaching fellows program do not possess the educational requirements to be appointed as probationary teachers. Teaching fellows work to obtain their Masters degree and the other credentials necessary to obtain a teaching license after they begin employment as a teacher. See Complaint ¶13 Thus, teaching fellows are employed provisionally since they do not yet qualify for official appointment. See e.g. Coleman v. Board of Educ., No. 96 Civ. 4293 (GBD), 2002 U.S. Dist. LEXIS 619 at *3-4 (S.D.N.Y. 2002). Provisional employees cannot achieve tenure until they satisfy the requirements for appointment, are then appointed to a probationary teaching position and then

9

satisfactorily complete a probationary period pursuant to the Education Law. See N.Y. Educ. Law 2573. Accordingly, because of his provisional status, plaintiff could be terminated for any reason and without a hearing. See Weintraub v. Board of Education, 298 A.D.2d 595 (N.Y. App. Div. 2d Dept. 2003); Preddice v. Callanan, 69 N.Y.2d 812, 813-14 (1987).

Plaintiff claims in his complaint that incentives to participate in the teaching fellows program somehow conferred to him additional property rights in his employment, because it created a "legitimate expectation" to employment with the Board for three years while participating in the program. See Complaint ¶59. However, such a unilateral expectation is simply insufficient to confer a constitutionally protected property right in employment. See Board of Regents, 408 U.S. at 577 (plaintiff must "have more than a unilateral expectation" of continued employment); Martz v. Valley Stream, 26 F.3d 26, 29-31 (2d Cir. 1994) (requiring a "clear entitlement" to continued employment in order to create a property interest). In this case, plaintiff cannot demonstrate a "clear entitlement" to his teaching position, as a three year guarantee of employment would violate state law. See N.Y. Educ. Law 2573.

Additionally, although plaintiff questions the factual basis upon which he was terminated in his complaint, such a dispute is not at issue when determining what process is due to a teacher. "[A]bsent a constitutionally impermissible purpose, or the violation of a statutory proscription, a probationary employee 'may be dismissed for almost any reason or for no reason at all.'" Sachs v. Bd. of Ed. of the Mineola Union Free School Dist., 71 A.D.2d 898, 899 (N.Y. App. Div. 2d Dept. 1979), aff'd, 50 N.Y.2d 830 (1980) (quoting Venes v. Community School Bd. of Dist. 26, 43 N.Y.2d 520, 525 (1978)); see also Guilbe v. New York City Bd. of Ed., 193 A.D.2d 604 (N.Y. App. Div. 2d Dept. 1993), app. den., 82 N.Y.2d 654 (1993). Here, plaintiff does not even allege that he was terminated for an constitutionally impermissible purpose or in violation of statute. See Complaint ¶¶18-41. Moreover, because plaintiff was a provisional

teacher who did not have the requisite qualifications for appointment pursuant to the New York State Education Law, plaintiff was not entitled to reinstatement or back pay. See Preddice, 69 N.Y.2d at 813-14. Thus, it is clear that under New York State Law, plaintiff did not have a property interest in his teaching position and therefore his due process claims must fail.

**B.** **Plaintiff Did Not Have A Property Interest In His Transitional B Teaching Certificate.**

Construing the allegations of the complaint in a light most favorable to plaintiff, plaintiff also alleges that the City defendants deprived plaintiff of his "property interest" in his Transitional B teaching certificate. See Complaint ¶73. However, plaintiff had no property interest in his Transitional B teaching certificate because it was not a pre-requisite to obtaining any employment. Similarly, the Transition B certificate did not entitle plaintiff to his teaching position with the Board or to any other teaching position. Rather, the Transitional B certificate was merely a recognition by the State of New York that allowed plaintiff to teach in the classroom while participating in an alternative licensing program such as the teaching fellows program. See generally 8 N.Y.C.R.R. 80-5.13.

New York state law has recognized that an individual has a property interest in a teaching license when the loss of such a license may preclude employment. See Lombard v. Board of Education, 645 F.Supp. 1574, 1578-79 (E.D.N.Y. 1986); see also Rogovin, 2001 U.S. Dist LEXIS 11923 at *13-14 ("This ruling [that there is a constitutionally protected property interest in a teaching license] was predicated on the fact that…a teaching license entitles its holder to a meaningful opportunity to seek employment pursuant to that license."). However, plaintiff's Transitional B teaching certificate is not necessary to obtain employment. As plaintiff admits in his complaint, he was able to obtain employment at the Board of Education *prior* to obtaining his Transitional B certificate. Additionally, it is clear in regulations concerning the

11

Transitional B certificate, such a certificate is issued *after* a candidate is employed by a school district and enrolled in a program such as the teaching fellows program. See 8 N.Y.C.R.R. 80-5.13(a) (requirements are "applicable for all candidates enroll*ed*" in an alternative certification program) (emphasis added).[6] Further, a Transitional B Certificate can not be used to obtain appointment as a teacher. Id.; Complaint ¶84 ("Enrollment in an alternative certification program is a *prerequisite* for a Transitional B certificate") (emphasis added). The apparent[7] revocation of plaintiff's Transitional B certificate therefore did not foreclose plaintiff from any employment opportunities, nor did it prevent him from seeking employment. Therefore, plaintiff has not and cannot allege that as a result of the alleged revocation of his Transitional B certificate, he has been unable to seek employment in programs similar to the teaching fellows program.

Throughout the complaint, plaintiff continually cites to the regulations concerning the issuance of Transitional B certificates as conferring upon plaintiff certain rights concerning his employment, including the alleged "right" to a three year term of employment by the Board. This is a gross misreading of the cited regulations. A plain reading of the regulations demonstrates that possession of a Transitional B certificate does not confer any "rights" on plaintiff. Rather, the certificate allows plaintiff to teach so long as he maintains his participation in a qualified program. See 8 N.Y.C.R.R. 80-5.13(a). The regulations specifically require the candidate's continued participation in an appropriate program. See 8 N.Y.C.R.R. 80-5.13(a)(1)

---

[6] For the Court's convenience, a copy of this regulation is annexed to the Eichenholtz Decl. as Exhibit C.

[7] Plaintiff does not allege anywhere in the complaint that his Transitional B certificate was, in fact, revoked. However, for the purposes of this motion to dismiss only, City defendants assume

("the *candidate* shall meet the requirements..."). Additionally, there is nothing in these regulations that confers a property interest in a transitional certificate. Such a reading of the regulations is contrary to well settled state law. Thus, possession of the Transitional B certificate is specifically conditioned on the holder's successful participation in a program such as the teaching fellows program. As such, a Transitional B certificate conveys only a mere expectancy to participate in a program such as the teaching fellows program. As a matter of law, mere expectancy is insufficient to convey a property interest. See <u>Rogovin</u>, 2001 U.S. Dist. LEXIS at *15-16.

Accordingly, because plaintiff does not have any legally protected property interests in either his teaching position or his Transitional B certificate, defendants did not violate plaintiff's due process rights and plaintiff's federal claims should be dismissed.

### POINT II

**EVEN ASSUMING ARGUENDO THAT PLAINTIFF HAD A PROTECTED PROPERTY INTEREST IN HIS TEACHING POSITION OR TRANSITIONAL B CERTIFICATE, PLAINTIFF'S DUE PROCESS CLAIMS MUST FAIL BECAUSE PLAINTIFF HAD MEANINGFUL AND ADEQUATE REMEDIES AVAILABLE TO HIM**

Even assuming that plaintiff did have a protected property interest in his employment or his Transitional B certificate, plaintiff's due process claims must be dismissed

---

that plaintiff no longer possesses such a certificate due to the fact that he was terminated from the Board.

[8] City defendants note that the law herein also applies to the federal claims against unserved defendants Vazquez and Boyce as well as the City defendants making this motion. Therefore, City defendants respectfully request that the court also dismiss the federal claims as to these defendants *sua sponte* for the reasons stated herein.

because plaintiff was afforded an adequate remedy to challenge the City defendants' actions. As discussed in Point I, in order to set forth a due process claim, plaintiff must show that he has a property or liberty interest protected by the Constitution. See Narumanchi v. Board of Trustees, 850 F.2d 70, 72 (2d Cir. 1988). If a protected interest is identified, the second step is to determine whether the defendant deprived the plaintiff of that interest without due process. Id. It is well settled that the type of process due to an employee "depends upon whether the alleged violation was caused by 'established state procedures' or by 'random, unauthorized acts by state employees.'" Hellenic American Neighborhood Action Committee v. City of New York ("HANAC"), 101 F.3d 877, 880 (2d Cir. 1996), cert. dismissed, 521 U.S. 1140 (1997).

In this case, plaintiff appears to primarily allege that the alleged deprivation of his property interests stemmed from a random, unauthorized act resulting from his supervisory employee's failure to recognize his alleged property interest and provide adequate due process. See Complaint ¶73 ("Despite knowing that plaintiff had significant property interests…the City, Board, Chancellor and Vazquez…decided not to implement due process procedures…"). However, plaintiff also alleges, without any factual support, that this alleged deprivation was also the result of established Board procedures. See Id.

## A.  Plaintiff Cannot Establish That He Was Denied Adequate Post-Deprivation Remedies For The Alleged Random Acts Of The Board.

To the extent that plaintiff has alleged that the deprivation of his teaching position and/or license was the result of a random act of the Board and/or its employees, it is clear that plaintiff's claim must fail because of the existence of several adequate post-deprivation remedies that were made available to plaintiff. Plaintiff had the grievance process contained in the UFT collective bargaining agreement available to him. In fact, as discussed in detail below, plaintiff was specifically offered, but declined, this remedy.

14

Plaintiff also could have commenced a special proceeding under Article 78 of the New York State Civil Practice Law and Rules ("CPLR"). In this context, plaintiff could have retained counsel and asserted before a state court judge that the termination of his employment "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." N.Y. Civ. Prac. L. & R. § 7803(3). Plaintiff also could have raised any constitutional due process claims in that proceeding. See HANAC, 101 F.3d at 881. As relief, plaintiff could have sought reinstatement as a remedy. See Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir. 1984), cert. denied, 469 U.S. 932 (1984).

The Second Circuit has repeatedly held that an Article 78 proceeding is a "perfectly adequate post-deprivation remedy" in situations involving claims of deprivations of liberty or property interests where such deprivations result from random and unauthorized acts of state employees. HANAC, 101 F.3d at 881; see also e.g. Giglio v. Dunn, 732 F.2d at 1134-35 (tenured high school principal who resigned and alleged that his resignation was coerced, and that the coercion was not preceded by a hearing, was not denied due process because Article 78 proceeding provided an adequate post-deprivation remedy.); Gudema v. Nassau County, 163 F.3d 717, 725 (2d Cir. 1998); Locurto v. Safir, 264 F.3d 154, 174-75 (2d Cir. 2001) ("as long as terminated city employees were afforded an adequate post-termination remedy in the form of an Article 78 proceeding in New York State Supreme Court, their due process rights were not violated by having a biased adjudicator at their pre-termination hearing."); Chaffer v. Bd. of Educ., 229 F. Supp. 2d 185, 189 (E.D.N.Y. 2002) (an Article 78 proceeding constitutes an adequate post-deprivation remedy); Rosenthal v. Bd. of Trustees, 999 F. Supp. 498, 506 (S.D.N.Y. 1998) (holding that an Article 78 provided a plaintiff with a meaningful review of the

NYPD's Board of Trustees' determination). Plaintiff did not avail himself of these post-deprivation remedies.

As discussed in detail below, plaintiff abandoned the grievance process prior to his grievance being heard by a neutral arbitrator. Plaintiff also failed to commence an Article 78 proceeding. It is readily apparent from the allegations of the complaint and as a matter of law that plaintiff had many meaningful due process remedies available to him, but did not avail himself of these remedies. Plaintiff's due process claims are simply not tenable under these circumstances.

## B.   Plaintiff Cannot Establish That The Board Had A Policy Of Depriving Employees Of Their Constitutional Rights.

Similarly, plaintiff's alternative argument that the Board has a policy or policies not to provide due process to teaching fellows is also without merit. Plaintiff was not "denied a fair forum for protecting" his alleged property interest by some policy, rule or regulation of the Board. McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990). To the contrary, the allegations in the complaint alone demonstrate that the Board has set up procedural safeguards to provide due process to all non-tenured teachers, including teaching fellows. As plaintiff plainly admits in the complaint, the Board, through a collective bargaining agreement with the UFT, has set up an extensive grievance procedure that culminates in arbitration before a neutral arbitrator. See Complaint ¶¶ 28-30. As a matter of law, this type of grievance procedure has been found to provide adequate to protect property interests. See e.g. Narumanchi, 850 F.2d at 72.

It is therefore evident that any lack of due process did not arise from any action or inaction by the Board but rather because abandoned his opportunity to contest his rights through the grievance process that was provided to him. As plaintiff admits in the complaint, the Board allowed plaintiff an opportunity to be heard during this grievance procedure. See Complaint ¶30.

16

Through this procedure, the Board allowed plaintiff an opportunity to explain why he should be reinstated with back pay. <u>See</u> Eichenholtz Decl., Exhibit B. However, due to disagreements with his union, plaintiff literally walked away from the grievance process prior to commencing arbitration. <u>See</u> Complaint ¶40. The Board had absolutely no involvement in plaintiff's decision to forego arbitration. As a matter of law, plaintiff cannot now claim that his due process rights were violated by the City defendants' policy or policies, even if he contends that the review available to plaintiff was inadequate. <u>See</u> <u>Narumanchi</u>, 850 F.2d at 72; <u>Aronson v. Hall</u>, 707 F.2d 693, 694 (2d Cir. 1983) ("Having chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process."); <u>Garrett v. Mazza</u>, Docket No. 97 CV 9748 (BSJ), 2001 U.S. Dist. LEXIS 1210 (S.D.N.Y. 2001) (denying due process claim after plaintiff voluntarily postponed her grievance hearing). It is disingenuous for plaintiff, who abandoned his grievance just before his case was to be heard by a neutral arbitrator, to now claim that the Board failed to provide plaintiff with adequate due process. Accordingly, plaintiff's conclusory allegations that the Board has some "policy" against providing Teaching Fellows with due process is wholly without merit and must be dismissed as a matter of law.

### POINT III

**PLAINTIFF'S CLAIMS AGAINST CHANCELLOR LEVY MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT ALLEGE THAT CHANCELLOR LEVY WAS PERSONALLY INVOLVED IN ANY ALLEGEDLY UNCONSTITUTIONAL ACTS**

It is well established that Section 1983 imposes liability upon a defendant who personally "subjects, or causes to be subjected" any person to the deprivation of any federal right. Accordingly, Section 1983 complaint must contain allegations that a defendant is "directly

and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)(quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1078 (1978)("personal involvement of defendants in alleged constitutional deprivations is a perquisite to an award of damages under Section 1983"); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); see also Alfaro Motors, Inc., 814 F.2d at 887("[a]llegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983").

Furthermore, liability under Section 1983 may not be predicated upon a theory of *respondeat superior* or vicarious liability. City of Canton, Ohio v. Harris, 489 U.S. 378 (1989); Meriwether v. Coughlin, 879 F.2d 1037, 1046 (2d Cir. 1989)("There is of course no vicarious liability in § 1983 actions"). The Second Circuit has long held that a "defendant in a Section 1983 action may not be held liable merely because he held a position of authority. Wright, 21 F.3d at 501. Thus, supervisory officials cannot be held liable for the acts of their subordinates solely on the theory of *respondeat superior*. Plaintiff at no point alleges personal involvement by Chancellor Levy. See Complaint. Therefore, plaintiff's complaint must be dismissed as to Chancellor Levy.

## POINT IV

### THE COMPLAINT IS DEVOID OF ANY ALLEGATIONS AGAINST THE CITY OF NEW YORK

Plaintiff's claims against the City of New York must also be dismissed because the complaint is devoid of any allegations concerning the City of New York. Historically, the Board has been a separate and distinct legal entity from the City of New York, and it has long been held that the City of New York is not liable for the allegedly tortuous acts of the Board.

See Gonzalez v. Esparza, Docket No. 02 CV 4185 (SWK), 2003 U.S. Dist. LEXIS 13711 at *4-5 (S.D.N.Y. 2003); Linder v. City of New York, 263 F.Supp.2d 585, 591 (E.D.N.Y. 2003); see also Titusville Iron Co. v. City of New York, 207 N.Y. 203, 208 (N.Y. 1912); Campbell v. City of New York, 203 A.D.2d 504 (N.Y. App. Div. 2d Dept. 1994); Gold v. City of New York, 80 A.D.2d 138, 142 (N.Y. App. Div. 1st Dept. 1973); Santiago v. Board of Education, 41. A.D.2d 616 (N.Y. App. Div. 1st Dept 1973); Goldman v. City of New York, 287 A.D.2d 689 (N.Y. App. Div. 2d Dept. 2001). Although "recent changes in the structure of the Board and the control by the mayor's office over the position of Chancellor have blurred the division between the two entities, the Board continues 'for all purposes, [to] be the government or public employer of all persons appointed or assigned by the city board or the community districts[.]'" Gonzalez, 2003 U.S. Dist. LEXIS 13711 at *5, quoting N.Y. Educ. Law. § 2590-g(2).

Other than the allegation set forth in paragraph 6 of the complaint, which states "Defendant City of New York (the "City") is a municipal corporation organized under the laws of the State of New York," plaintiff does not make any allegation solely concerning defendant City. See Complaint ¶6. Thereafter, plaintiff make reference throughout the complaint to alleged actions being taken by "the City and/or the Board" or includes the City with the Board and its employees, it is clear from the context of those allegations that plaintiff is referring to his employment with the Board and alleged actions taken by the Board. Clearly, these conclusory allegations alone cannot state a claim against the City of New York upon which relief can be granted. Accordingly, the complaint must be dismissed as to defendant City of New York.

### POINT V

**THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS**

As discussed herein, plaintiff's theory of federal jurisdiction in this case is premised on federal question jurisdiction arising from plaintiff's untenable due process claims. Because the instant action does not contain any viable federal claims, this Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3); Castellano v. City of New York, 142 F.3d 58, 74 (2d Cir. 1998) ("In light of the district courts' proper dismissal of the federal claims ... those courts did not abuse their discretion in declining to exercise jurisdiction over the state claims."), cert. denied, 525 U.S. 922 (1998); Castellano v. Bd. of Trs., 937 F.2d 752, 758 (2d Cir. 1991) ("'If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)).[9]

---

[9] Pursuant to the Court's order at the pre-motion conference, City defendants have initially limited their motion to plaintiff's federal claims. City defendants respectfully request that if the instant motion be denied, the Court grant leave to make a supplemental motion concerning plaintiff's state law claims.

## CONCLUSION

For the reasons set forth above, City defendants respectfully request that the Complaint be denied in its entirety and that this action be dismissed with costs, disbursements, and such other and further relief as this Court deems just and proper.

Dated:      New York, New York
November 1, 2004

MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street, Room 2-300
New York, New York 10007
(212) 788-0885

By: _____
Eric Eichenholtz (EE3286)
Assistant Corporation Counsel

Diana Goell Voigt,
Eric Eichenholtz
Of Counsel.

21