UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Clifford Steward, individually and on behalf of all
similarly situated persons,

Plaintiff,

-against-

The City of New York, The New York City Board of
Education, Harold O. Levy, individually and in his
official capacity as Chancellor of the New York City
Board of Education, Felix E. Vazquez, individually and
in his official capacity as Community Superintendent of
District 32 of the New York City Board of Education,
Mildred L. Boyce, The United Federation of Teachers,
and Pace University,

Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street*
*New York, N.Y.  10007*


*Of Counsel: Eric Eichenholtz*

*Tel:  (212) 788-0885*
*Matter No. 04LE000114*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..............................................................................1

STATEMENT OF FACTS................................................................................5

ARGUMENT.............................................................................................6

    POINT I.........................................................................................6

PLAINTIFF'S DUE PROCESS CLAIMS FAIL BECAUSE THE UNDISPUTED EVIDENCE DEMONSTRATES THAT PLAINTIFF DOES NOT HAVE A PROPERTY INTEREST IN HIS TEACHING POSITION

    A. Plaintiff's Teaching Position ...........................................................6

    B. Plaintiff's Transitional B Certificate ...............................................11

    POINT II........................................................................................12

EVEN ASSUMING ARGUENDO THAT PLAINTIFF HAD A PROTECTED PROPERTY INTEREST IN HIS TEACHING POSITION, PLAINTIFF'S DUE PROCESS CLAIMS MUST FAIL BECAUSE PLAINTIFF HAD MEANINGFUL AND ADEQUATE REMEDIES AVAILABLE TO HIM WHICH SATISFIED DUE PROCESS

    A. Plaintiff Files a Grievance and then Abandons the Grievance Process..........13

    B. Plaintiff also Appeals his "Unsatisfactory" Rating, then Abandons the Appeal Process..........................................................................................15

    C. Plaintiff Also had Article 78 Review Available to Him.............................15

    POINT III.......................................................................................17

THE COMPLAINT IS DEVOID OF ANY ALLEGATIONS AGAINST THE CITY OF NEW YORK

    POINT IV......................................................................................18

THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

CONCLUSION.........................................................................................20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

Clifford Steward, individually and on behalf of all similarly
situated persons,

Plaintiff,

04 CV 1508 (CBA) (RML)

-against-

The City of New York, The New York City Board of
Education, Harold O. Levy, individually and in his official
capacity as Chancellor of the New York City Board of
Education, Felix E. Vazquez, individually and in his
official capacity as Community Superintendent of District
32 of the New York City Board of Education, Mildred L.
Boyce, The United Federation of Teachers, and Pace
University,

Defendants.

-------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CITY DEFENDANTS' MOTION TO FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Plaintiff Clifford Steward ("plaintiff") commenced this action, alleging that the

City of New York, the New York City Board of Education (the "Board"), former Chancellor

Harold Levy, (collectively the "City defendants"), along with former Superintendent Felix

Vazquez and former Board employee Mildred Boyce,[1] terminated plaintiff and, in so doing,

violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In addition to his due process claims, plaintiff asserts a claim that his union, the United

---

[1] Upon information and belief, defendants Felix E. Vazquez and Mildred Boyce have not yet been served with the summons and complaint. However, the City defendants, for the reasons discussed herein, request that the federal claims against Mr. Vazquez and Ms. Boyce be dismissed *sua sponte*.

Federation of Teachers ("UFT"), breached their duty of fair representation. Plaintiff also asserts various state law tort and contract claims against the City defendants, the UFT and Pace University.[2]

All parties requested permission to move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint. At the pre-motion conference held on September 14, 2004, the Court ordered the parties to brief the federal due process claims. City defendants moved to dismiss the federal claims. By order dated September 8, 2005, this Court denied City defendants' motion without prejudice to renew following limited discovery into the nature of plaintiff's participation in the Teaching Fellows program. This limited discovery has now concluded and City defendants now submit the instant motion for summary judgment pursuant to the Court's September 8, 2005 order.

After engaging in limited discovery, it is beyond dispute that plaintiff's claims are wholly without merit and that summary judgment is appropriate. In order to sustain his due process claim, plaintiff must submit evidence that he had a constitutionally protected property interest in his employment with City defendants by virtue of his participation with the Teaching Fellows Program. If a protected interest is identified, the plaintiff must then demonstrate that City defendants deprived the plaintiff of that interest without due process. In this case, the undisputed evidence is clear that plaintiff never acquired any protected property interest in his employment, nor can he demonstrate that the City defendants deprived him of any alleged property interest without due process.

It is well-settled law in New York State that only tenured teachers have protected property interests in employment. In order to achieve tenure, a candidate must be appointed,

---

[2] This office does not represent the UFT, nor does it represent Pace University.

possess all of the credentials required by state law, and successfully complete a three year probationary period. As discussed in detail below, plaintiff did not yet possess the necessary credentials to be officially appointed as a teacher, and therefore his employment at the Board of Education was provisional. Indeed, the evidence demonstrates that plaintiff acknowledged his provisional status when he began working for the Board. The evidence also demonstrates that plaintiff was never promised that he would be employed for three years. To the contrary, plaintiff was specifically warned that his continued employment with the Board and participation in the Teaching Fellows Program was contingent upon his maintaining good standing both in his educational program as well as his teaching. Thus, based on the facts presented herein, plaintiff did not have a protected property interest in his employment with the Board as a matter of law.

To the extent plaintiff claims he has a property interest in his teaching license, such an argument is unavailing. The law and undisputed evidence in this case demonstrates that the possession of the Transitional B teaching certificate does not confer a claim to any specific position, no property interest exists in the mere possession of the teaching license.

Even assuming *arguendo* that plaintiff had some protected property interest, it is clear that City defendants did not deprive plaintiff of due process in connection with this alleged property interests. Indeed, plaintiff could have (and in fact did) challenge his termination through a grievance through the grievance procedure set forth in the collective bargaining agreement between his union and the Board of Education. However, plaintiff abandoned this grievance process. Plaintiff could have also commenced a special proceeding in New York State Court pursuant to Article 78 of the New York Civil Practice Law and Rules ("CPLR"), either before or after his termination, and in which he could have sought reinstatement and back pay as remedies. In this case, after abandoning some of the remedies available to him, including the opportunity to

have his case being heard by a neutral arbitrator, it is disingenuous for plaintiff to claim he was deprived of due process by the City defendants.

## STATEMENT OF FACTS

City defendants respectfully refer the Court to their Statement of Undisputed Facts pursuant to Local Rule 56.1, dated November 13, 2006, the Declaration of Eric Eichenholtz, dated November 13, 2006 and the exhibits annexed thereto for a statement of pertinent and material facts.

# ARGUMENT

## POINT I

## PLAINTIFF'S DUE PROCESS CLAIMS FAIL BECAUSE THE UNDISPUTED EVIDENCE DEMONSTRATES THAT PLAINTIFF DOES NOT HAVE A PROPERTY INTEREST IN HIS TEACHING POSITION

Plaintiff's sole federal claim is that he was deprived his constitutional right to due process in connection with his termination from the Board (the "due process claims"). See Declaration of Eric Eichenholtz, dated November 13, 2006 ("Eichenholtz Decl"), Exhibit A ¶¶64-82. In order to allege a violation of due process, a plaintiff must demonstrate that he or she had a constitutionally protected property interest. See Rivera v. City of New York, 392 F.Supp.2d 644, 652 (S.D.N.Y. 2005), citing New York State N.O.W. v. Pataki, 261 F.3d 156, 163 (2d Cir. 2001); Rivera v. Community School District Nine, et. al., 145 F.Supp.2d 302, 306 (S.D.N.Y. 2001), citing Board of Regents v. Roth, 408 U.S. 564, 570-571 (1972). As the Supreme Court has stated, property rights

> are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules and understandings that secure certain benefits and that support claims of entitlement to those benefits.

See Board of Regents, 408 U.S. at 577.

### A. Plaintiff's Teaching Position

With respect to a teaching position, the rules and dimensions of a property interest in a teaching position are clearly established in well settled New York State Law. "Under New York State Law, only teachers with tenure or *de facto* tenure have a property interest in their employment." See Rogovin v. New York City Board of Education, Docket No. 99 CV 3382

(ERK), 2001 U.S. Dist. LEXIS 11923 at *11 (E.D.N.Y. 2001); see also Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006).

The requirements for achieving tenure are set forth in state law. In order to achieve tenure, and thereby obtain a protected property interest in a teaching position, a teacher appointed by the Board must complete a three year probationary period. See N.Y. Educ Law 2573(1). However, in order to be considered for tenure, a teacher must possess the appropriate educational qualifications and be properly licensed in order to be appointed as a probationary teacher. See N.Y. Educ. Law 2573(9). As plaintiff admits in his complaint, New York State law, New York State Department of Education regulations and BOE regulations require a Masters degree to be licensed, appointed and eligible for tenure. See Eichenholtz Decl., Exhibit A ¶13.

In this case, the undisputed evidence shows that plaintiff, a provisional untenured teacher, did not and could not have had a property interest in his teaching position. As plaintiff admits in his complaint, participants in the Teaching Fellows program do not possess the educational requirements for appointment as probationary teachers. The teaching Fellows Program permits participants to work toward their Masters degree while simultaneously working as a provisional teacher with the Board. See Eichenholtz Decl., Exhibit A ¶13. Indeed, the Board specifically informed plaintiff, and plaintiff specifically acknowledged, that he would be serving as a *provisional* teacher during the time he was participating in the Teaching Fellows program and working toward obtaining his Masters degree. See Eichenholtz Decl., Exhibit G. Specifically, plaintiff acknowledged that he would be serving as a Certified Provisional Teacher ("CPT") upon being issued a Transitional B certificate.

Accordingly, because plaintiff was a provisional teacher, a fact which cannot be disputed, he does not, as matter of law, have a protected property interest in his employment.

- 7 -

See McPherson v. New York City Department of Education, 457 F.2d 211, 216 (2d Cir. 2006); Edwards v. City of New York, 2005 U.S. Dist. LEXIS 34376 (S.D.N.Y. 2005). Teachers who have not achieved tenure, including probationary and provisional teachers, do not have a property interest in their employment and can be terminated for any reason and without a hearing. See McPherson, 457 F.3d at 216; Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006) quoting Roth, 408 U.S. at 577 ("Segal has conceded, as she must, that she has no property interest in her continued employment at the [Department of Education.] As a probationary employee, she did not have a 'legitimate claim of entitlement; to her position as a kindergarten teacher."); see also Edwards, 2005 U.S. Dist. LEXIS 34376 at *57-58, citing Preddice v. Callanan, 69 N.Y.2d 812, 813 (N.Y. 1987); Mansell v. City of New York, 304 A.D.2d 381 (N.Y. App. Div. 1st Dept. 2003) (discussing provisional employment); Koehler v. New York City Department of Education, 2005 U.S. Dist LEXIS 35045 (S.D.N.Y. 2005) (non-tenured teacher has no property interest in employment).

Plaintiff seeks to ignore this well settled law instead argues that advertisements and incentives to participate in the Teaching Fellows program somehow conferred him with a property interest in his employment notwithstanding his provisional status because participating in the Teaching Fellows program created a "legitimate expectation" of three years of continuous employment with the Board See Eichenholtz Decl., Exhibit A at p. ¶59. However, plaintiff's s "legitimate expectation" was revealed in discovery as merely be plaintiff's own assumption that he would successfully complete the Teaching Fellows program. In fact, acknowledgements and documents plaintiff signed specifically set forth and served as notification to plaintiff that he was required to maintain good standing as a Board employee and in his education at Pace University in order to remain in the Teaching Fellows program. See Eichenholtz Decl., Exhibit F. Plaintiff claims that because high ranking Board and UFT officials spoke highly of the Teaching Fellows

program and its candidates, he had assumed that he would successfully complete the Teaching Fellows program. See Eichenholtz Decl., Exhibit C at p. 99-103. "The flaw in plaintiff's logic is that the [Board's] alleged representation did not promise that the [Board] would ensure that every individual in the Teaching Fellows program would succeed." Centolanzi v. Department of Education, Supreme Court, New York County Index No. 117617/05 (Sup. Ct. N.Y. Co. 2006).[3] Indeed, as set forth above, plaintiff was notified that his participation in the Teaching Fellows program was contingent on plaintiff remaining in good standing both as a teacher working for the Board as well as a student in Pace University. See Eichenholtz Decl., Exhibit F.

Accordingly, because plaintiff cannot establish that he had anything more than a unilateral expectation of successfully completing the Teaching Fellows program, plaintiff cannot establish that he had a property interest in his position with Board. Such a unilateral expectation` is simply insufficient to confer a constitutionally protected property right in employment. See Board of Regents, 408 U.S. at 577 (plaintiff must "have more than a unilateral expectation" of continued employment); Martz v. Valley Stream, 26 F.3d 26, 29-31 (2d Cir. 1994) (requiring a "clear entitlement" to continued employment in order to create a property interest).

In his complaint and throughout this litigation, plaintiff has cited language concerning an alleged "three year commitment" contained in the regulations governing the certification issued by the State of New York to candidates enrolled in programs such as the Teaching Fellows program.[4] Plaintiff opines that these regulations mean the Board was, as some

---

[3] A copy of this unpublished decision is annexed to the Eichenholtz Decl. as Exhibit T. It should also be noted that counsel for the plaintiff in Centolanzi is the same counsel as counsel for the plaintiff herein.

[4] A plain reading of the regulations relied on by the plaintiff demonstrates that possession of a Transitional B certificate does not confer any "rights" on plaintiff. Rather, the certificate allows plaintiff to teach so long as he maintains his participation **in good standing** in the program. See 8 N.Y.C.R.R. 80-5.13(a). In addition, the regulation places the burden on the

point "required" to provide him with a guarantee of employment for three years. However, discovery has revealed that at no time was plaintiff ever guaranteed employment. In order to sustain his due process claim in the face of plaintiff's provisional employment status, the plaintiff must point to a written **guarantee** of continuous employment for a three year period in order to establish a property interest. See McPherson, 457 F.3d at 216; Grunberg v. Board of Education, 2006 U.S. Dist. LEXIS 22324 (E.D.N.Y. March 30, 2006). "Without a guarantee [an alleged commitment of employment] does not rise to the level of a constitutionally protected property interest." Grunberg, 2006 U.S. Dist. LEXIS 22324 at *24.

Plaintiff cannot point to any guarantee of employment for a specific period of time, much less a guarantee of three years' employment, that could potentially convey a property interest in his employment with the Board. To the contrary, it is undisputed that the Board does **not** guarantee three years of employment to Teaching Fellows. See Eichenholtz Decl., Exhibit D at p. 79. Similarly, the State of New York does **not** require schools to issue written three year guarantees of employment, as plaintiff's self-serving interpretation of the state regulations would imply. See Eichenholtz Decl., Exhibit E at pp. 10, 19. Finally, as plaintiff himself admitted at his deposition, plaintiff never received any sort of written guarantee of employment while working for the Board. To the contrary, when the Board advised him through the documents he signed that he was provisional and must remain in good standing, but plaintiff dismissed this advisement as a bunch of "mumbo jumbo." See Eichenholtz Decl., Exhibit C at p. 103. Thus,

---

candidate, not the employer, to fulfill the criteria listed in the regulation. See 8 N.Y.C.R.R. 80-5.13(a)(1) ("the *candidate* shall meet the requirements..."). Even if plaintiff's self-serving argument is correct, this would mean, at most, that the Teaching Fellows program is not a program that fulfills the requirements of these regulations. The regulations cannot create a commitment of employment that even plaintiff admits was never given to plaintiff by the Board.

there is simply no basis in the record to conclude that plaintiff had a property interest in his employment with the Board.

**B.      Plaintiff's Transitional B Certificate**

Liberally construing plaintiff's complaint, plaintiff also appears to allege that City defendants deprived plaintiff of his "property interest" in his Transitional B teaching certificate. See Eichenholtz Decl., Exhibit A ¶73.  However, plaintiff had no property interest in his Transitional B teaching certificate because it was not a pre-requisite to obtaining any employment with the Board.  Similarly, the Transition B certificate did not entitle plaintiff to his teaching position with the Board or to any other teaching position.  Rather, the Transitional B certificate was merely a recognition by the State of New York that allowed plaintiff to teach in the classroom while participating in an alternative licensing program such as the teaching fellows program.  See generally 8 N.Y.C.R.R. 80-5.13.

New York state law has recognized that an individual has a property interest in a teaching license when the loss of such a license may preclude employment.  See Lombard v. Board of Education, 645 F.Supp. 1574, 1578-79 (E.D.N.Y. 1986); see also Rogovin, 2001 U.S. Dist LEXIS 11923 at *13-14 ("This ruling [that there is a constitutionally protected property interest in a teaching license] was predicated on the fact that...a teaching license entitles its holder to a meaningful opportunity to seek employment pursuant to that license.").  However, this is not the purpose of the Transitional B teaching certificate.  As plaintiff admits in his complaint, he had a meaningful opportunity and, indeed, was able to obtain employment at the Board of Education *prior* to obtaining his Transitional B certificate.  Additionally, it is clear in regulations concerning the Transitional B certificate, such a certificate is issued *after* a candidate is employed by a school district and enrolled in a program such as the teaching fellows program.  See 8 N.Y.C.R.R. 80-5.13(a) (requirements are "applicable for all candidates enroll*ed*" in an

alternative certification program) (emphasis added). Further, a Transitional B Certificate can not be used to obtain appointment as a teacher. Id.; Eichenholtz Decl., Exhibit A ¶84 ("Enrollment in an alternative certification program is a *prerequisite* for a Transitional B certificate") (emphasis added). Thus, the awarding of a Transitional B certificate is a privilege afforded to those in good standing in an approved program, it is *not* an entitlement to any benefits. Under such circumstances, plaintiff's "interest in the teaching license constitutes no more than a mere unilateral expectation." See Oparaji v. New York City Department of Education, 2005 U.S. Dist. LEXIS 13043 at *24 (E.D.N.Y. 2005); see also Rogovin, 2001 U.S. Dist LEXIS 11923. Therefore, plaintiff did not possess any property interest in his Transitional B certificate, nor would the issuance of such a certificate have conveyed any property interests to plaintiff in his employment or in his education.

Accordingly, because the undisputed facts demonstrate that plaintiff does not have any legally protected property interests in either his teaching position or his Transitional B certificate, defendants did not violate plaintiff's due process rights by summarily terminating plaintiff's employment and plaintiff's federal claims should be dismissed.

## POINT II

**EVEN ASSUMING ARGUENDO THAT PLAINTIFF HAD A PROTECTED PROPERTY INTEREST IN HIS TEACHING POSITION, PLAINTIFF'S DUE PROCESS CLAIMS MUST FAIL BECAUSE PLAINTIFF HAD MEANINGFUL AND ADEQUATE REMEDIES AVAILABLE TO HIM WHICH SATISFIED DUE PROCESS**

As discussed above, as a non-tenured teacher, plaintiff had no property interest in his employment and was not entitled to a hearing prior to his termination. See Koehler II, 2005 U.S. Dist. LEXIS 35045 at *7 ("A non-tenured employee is not entitled to a pre-deprivation

hearing because such an employee does not have a property interest in her position.") (quotations and citations omitted). However, even assuming *arguendo* that plaintiff did have a protected property interest in his employment, plaintiff's due process claims must be dismissed because plaintiff was afforded an adequate remedy to challenge the City defendants' actions. Indeed, the record is clear that plaintiff had notice of the grounds which the basis of his termination. The Board also had two distinct fora available to plaintiff to safeguard whatever rights he may have in his teaching position, an Article 78 proceeding and the grievance process afforded to him through his Collective Bargaining Agreement. See Koehler v. City of New York, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. 2005) ("Koehler I"). Plaintiff also had an appeal of his "unsatisfactory" rating available to him pursuant to the Board bylaws. Under such circumstances, plaintiff cannot claim he was deprived of due process by the City defendants.

## A.    Plaintiff Files a Grievance and then Abandons the Grievance Process

In this case, it is undisputed that plaintiff was afforded the opportunity to contest his termination through a grievance procedure. Under the Collective Bargaining Agreement, plaintiff was afforded the opportunity to file a grievance, pursuing a number of appeals and, if his union concurred, proceed to arbitration. See Eichenholtz Decl., Exhibit M. As a matter of law, this type of grievance procedure has been found to provide adequate to protect both property and liberty interests. See e.g. Narumanchi, 850 F.2d at 72; Koehler I, 2005 U.S. Dist. LEXIS 8901; Gonzalez v. City of New York, 135 F.Supp.2d 385, 398 (E.D.N.Y. 2001) ("The Second Circuit has repeatedly held that a grievance procedure in a collective bargaining agreement is generally sufficient to satisfy due process, and the failure to take advantage of that procedure forecloses a due process argument.").

Here, plaintiff availed himself of the grievance procedure for a time, but ultimately abandoned his attempts to challenge his termination because of a disagreement with

his union representatives. Plaintiff filed a grievance challenging his termination and the grievance was denied at the first, second and third step. See Eichenholtz Decl., Exhibits N, O. Plaintiff was then afforded the opportunity to have his case heard by a neutral arbitrator. Id., Exhibit P, Exhibit C at pp. 79-80.

It is therefore evident that any lack of due process did not arise from any action or inaction by the Board but rather because abandoned his opportunity to contest his rights through the grievance process that was provided to him. As plaintiff admits in the complaint, the Board allowed plaintiff an opportunity to be heard during this grievance procedure. See Eichenholtz Decl., Exhibit A ¶30. Through this procedure, the Board allowed plaintiff an opportunity to explain why he should be reinstated with back pay. See Eichenholtz Decl., Exhibits N, O. However, due to disagreements with his union, plaintiff literally walked away from the grievance process prior to commencing arbitration. See Eichenholtz Decl, Exhibit A ¶40; Exhibit C at pp. 94, 97. The Board had absolutely no involvement in plaintiff's decision to forego arbitration. As a matter of law, plaintiff cannot now claim that his due process rights were violated by the City defendants' policy or policies, even if he contends that the review available to plaintiff was inadequate. See Narumanchi, 850 F.2d at 72; Aronson v. Hall, 707 F.2d 693, 694 (2d Cir. 1983) ("Having chosen not to pursue available administrative review, [plaintiff] is hardly in a position to claim that such review denied him due process."); Garrett v. Mazza, Docket No. 97 CV 9748 (BSJ), 2001 U.S. Dist. LEXIS 1210 (S.D.N.Y. 2001) (denying due process claim after plaintiff voluntarily postponed her grievance hearing). Moreover, it is downright disingenuous for plaintiff, who abandoned his grievance just before his case was to be heard by a neutral arbitrator, to now claim that somehow the Board was at fault for allegedly failing to provide him an opportunity to challenge his termination. See Koehler I, 2005 U.S. Dist. LEXIS 8901 at *25 ("Plaintiff cannot manufacture a §1983 claim by pointing to the allegedly defective hearing

- 14 -

while ignoring the part of the regulatory process that serves to redress administrative error.") (internal quotations and citations omitted). Because plaintiff had the opportunity to challenge his termination through this grievance procedure, his due process claim must fail.

**B.      Plaintiff also Appeals his "Unsatisfactory" Rating, then Abandons the Appeal Process**

Plaintiff was entitled to a review of his "unsatisfactory" evaluation pursuant to the Board bylaws. See Exhibit S. This appeal would have given plaintiff the opportunity to cross-examine witnesses and present evidence before a Board officer appointed by the Chancellor. See Exhibit S ¶3. Much like his grievance, however, plaintiff apparently abandoned this opportunity to be heard and to contest the factual circumstances underlying his termination. Indeed, plaintiff's appeal was closed because the Office of Appeals and Reviews had not heard from plaintiff concerning his appeal for over two years. Id. ¶8.

**C.      Plaintiff Also had Article 78 Review Available to Him**

Plaintiff also had an opportunity to challenge the Board's actions, both before and after his termination, by commencing a special proceeding under Article 78 of the New York State Civil Practice Law and Rules ("CPLR"). See Koehler I, 2005 U.S. Dist. LEXIS 8901 at *22 ("[A] state court Article 78 proceeding was available to Koehler both before and after her termination.") Article 78 is "the customary procedural vehicle for review of administrative determinations." Id., quoting Mitchell v. Fishbein, 377 F.3d 157, 170 (2d Cir. 2004). In this context, plaintiff could have retained counsel and asserted before a state court judge that the termination of his employment "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed." N.Y. Civ. Prac. L. & R. § 7803(3). Plaintiff also could have raised any constitutional due process claims in that

proceeding. See Hellenic American Neighborhood Action Committee v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996). As relief, plaintiff could have sought reinstatement and back pay as a remedy. See Giglio v. Dunn, 732 F.2d 1133, 1134 (2d Cir. 1984), cert. denied, 469 U.S. 932 (1984).

The Second Circuit has repeatedly held that an Article 78 proceeding is a "perfectly adequate post-deprivation remedy" in situations involving claims of deprivations of liberty or property interests where such deprivations result from random and unauthorized acts of state employees. See e.g. Giglio v. Dunn, 732 F.2d at 1134-35 (tenured high school principal who resigned and alleged that his resignation was coerced, and that the coercion was not preceded by a hearing, was not denied due process because Article 78 proceeding provided an adequate post-deprivation remedy.); Gudema v. Nassau County, 163 F.3d 717, 725 (2d Cir. 1998); Locurto v. Safir, 264 F.3d 154, 174-75 (2d Cir. 2001) ("as long as terminated city employees were afforded an adequate post-termination remedy in the form of an Article 78 proceeding in New York State Supreme Court, their due process rights were not violated by having a biased adjudicator at their pre-termination hearing."); Chaffer v. Bd. of Educ., 229 F. Supp. 2d 185, 189 (E.D.N.Y. 2002) (an Article 78 proceeding constitutes an adequate post-deprivation remedy); Rosenthal v. Bd. of Trustees, 999 F. Supp. 498, 506 (S.D.N.Y. 1998) (holding that an Article 78 provided a plaintiff with a meaningful review of the NYPD's Board of Trustees' determination).

Thus, contrary to the allegations in the complaint, the Board does provide Teaching Fellows with procedural safeguards and opportunities to protect whatever interests may exist in their employment. Under the circumstances presented herein, it is also clear that plaintiff was not "denied a fair forum for protecting" his alleged property interest by some policy, rule or regulation of the Board. McDarby v. Dinkins, 907 F.2d 1334, 1337 (2d Cir. 1990). To the

contrary, "[e]ven assuming [plaintiff] did have a property interest in employment, under the Paratt-Hudson line of cases, this extensive post-deprivation process would be more than adequate to provide plaintiff with all of the process that was due." Rivera, 392 F.Supp.2d at 652, citing McNemeny v. City of Rochester, 241 F.3d 279 (2d Cir. 2001); Paratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1983). Plaintiff's conclusory allegations that the Board has some "policy" against providing Teaching Fellows with due process is wholly without merit and must be dismissed as a matter of law. "In light of the availability of several appeal mechanisms – none of which Plaintiff pursued to completion – Plaintiff's arguments regarding the alleged inadequacy" of the due process afforded to Teaching Fellows are without merit. Koehler I, 2005 U.S. Dist. LEXIS 8901 at *25. Accordingly, even if plaintiff had a protected property interest in his employment with the Board, his due process claim must nonetheless fail because of the significant procedural protections afforded to him by the Board.

## POINT III

### THE COMPLAINT IS DEVOID OF ANY ALLEGATIONS AGAINST THE CITY OF NEW YORK

Plaintiff's claims against the City of New York must also be dismissed because the complaint is devoid of any allegations concerning the City of New York. Historically, the Board has been a separate and distinct legal entity from the City of New York, and it has long been held that the City of New York is not liable for the allegedly tortuous acts of the Board. See Marrero v. City of New York, 2004 U.S. Dist. LEXIS 3529 (S.D.N.Y. 2004); Gonzalez v. Esparza, Docket No. 02 CV 4185 (SWK), 2003 U.S. Dist. LEXIS 13711 at *4-5 (S.D.N.Y. 2003); Linder v. City of New York, 263 F.Supp.2d 585, 591 (E.D.N.Y. 2003); see also Titusville Iron Co. v. City of New York, 207 N.Y. 203, 208 (N.Y. 1912); Campbell v. City of New York, 203 A.D.2d 504 (N.Y. App. Div. 2d Dept. 1994); Gold v. City of New York, 80 A.D.2d 138, 142

(N.Y. App. Div. 1st Dept. 1973); Santiago v. Board of Education, 41. A.D.2d 616 (N.Y. App. Div. 1st Dept 1973); Goldman v. City of New York, 287 A.D.2d 689 (N.Y. App. Div. 2d Dept. 2001). Although "recent changes in the structure of the Board and the control by the mayor's office over the position of Chancellor have blurred the division between the two entities, the Board continues 'for all purposes, [to] be the government or public employer of all persons appointed or assigned by the city board or the community districts[.]'" Gonzalez, 2003 U.S. Dist. LEXIS 13711 at *5, quoting N.Y. Educ. Law. § 2590-g(2).

Plaintiff's claims relate solely to alleged acts of the Board and its employees, and there is no basis for a claim against the City of New York in this action. Accordingly, the complaint must be dismissed as to defendant City of New York.

## POINT IV

### THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

As discussed herein, plaintiff's theory of federal jurisdiction in this case is premised on federal question jurisdiction arising from plaintiff's untenable due process claims. Because the instant action does not contain any viable federal claims, this Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims. See 28 U.S.C. § 1367(c)(3); Castellano v. City of New York, 142 F.3d 58, 74 (2d Cir. 1998) ("In light of the district courts' proper dismissal of the federal claims ... those courts did not abuse their discretion in declining to exercise jurisdiction over the state claims."), cert. denied, 525 U.S. 922 (1998); Castellano v. Bd. of Trs., 937 F.2d 752, 758 (2d Cir. 1991) ("'If the federal claims are dismissed

before trial, even though not insubstantial in a jurisdictional sense, the state claims should be

dismissed as well.'") (quoting <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)).[5]

---

[5] Indeed, this Court relied on this principle when it directed the parties to focus motion practice and discovery solely on the federal claims herein.

## CONCLUSION

For the reasons set forth above, City defendants respectfully request that the Complaint be denied in its entirety and that this action be dismissed with costs, disbursements, and such other and further relief as this Court deems just and proper.

Dated:      New York, New York
             November 13, 2006

                             MICHAEL A. CARDOZO
                             Corporation Counsel of the City of New York
                             Attorney for City Defendants
                             100 Church Street, Room 2-104
                             New York, New York 10007
                             (212) 788-0885

             By:         _____
                             Eric Eichenholtz (EE3286)
                             Assistant Corporation Counsel